2026 IL App (1st) 250387-U

Order filed: August 12, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-25-0387

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| 55 EAST WASHINGTON DEVELOPMENT LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2020 CH 05706 |
| | ) | |
| ADAM DAVID LYND, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1  *Held*: Plaintiff brought a lawsuit against defendant, who was allegedly a member of a Delaware limited liability company known as ADP. In the lawsuit, plaintiff sought to pierce the corporate veil and hold defendant personally liable for a prior judgment that had been entered against ADP for breach of contract. The circuit court granted summary judgment for defendant and denied summary judgment for plaintiff. We affirm the denial of summary judgment for plaintiff, reverse the granting of summary judgment for defendant, and remand for further proceedings.

¶ 2  In November 2015, Adam David Partners I, LLC (ADP) filed a complaint against plaintiff, 55 East Washington Development LLC, in case number 15 CH 17028, for fraud, consumer fraud, reformation, specific performance, and negligent misrepresentation in connection with ADP's failed attempt to purchase a building which was partially owned by plaintiff. Plaintiff filed a counterclaim for breach of contract against ADP. The circuit court granted summary judgment in

favor of plaintiff on ADP's complaint and on its counterclaim and awarded plaintiff $1,205,743.86 in damages, interest, and attorney fees and costs. On July 8, 2021, plaintiff filed a first amended complaint against defendant, Adam David Lynd, in case number 2020 CH 05706, alleging that defendant was the sole member and manager of ADP. In its amended complaint, plaintiff sought to pierce the corporate veil and hold defendant personally liable for the $1,205,743.86 judgment against ADP in case number 15 CH 17028. The parties filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of defendant and denied plaintiff's cross-motion for summary judgment, refusing plaintiff's request to pierce the corporate veil. Plaintiff appeals. We affirm the denial of summary judgment for plaintiff, reverse the grant of summary judgment for defendant, and remand for further proceedings.

¶ 3    In 1997, defendant worked for the Lynd Company, an apartment management company founded by his father, Michael Lynd Sr. In the late 2000s, defendant also became a part owner of Lynd Residential Properties, which was a property acquisition company, and Lynd Development Partners, which was a residential property development company. In 2008, Lynd Development Partners developed six multi-unit properties, including EnV Chicago, a high-rise apartment building in Chicago's River North neighborhood.

¶ 4    In 2014, defendant left the Lynd Company and sold his interests in Lynd Residential Properties and Lynd Development Partners to his brother. Plaintiff alleges that in September 2014, defendant became a member of ADP, a limited liability company (LLC). In his uncontroverted affidavit, though, defendant states that he was not a member of ADP but instead was its manager. Defendant attested that ADP's members consisted of the Adam David Lynd Heritage Trust (Trust), Shogun Partners, LLC (Shogun) and Willie H. Watson III. ADP's operating agreement also identified the Trust, Shogun, and Watson as its members.

¶ 5      ADP was formed to acquire stock in Capital Art Inc. (Capital Art), which owned a catalog of images of Hollywood celebrities. ADP's business plan was to monetize those images by licensing or selling them or by creating fine art that would be sold to galleries. ADP ultimately invested $1 million to purchase stock in Capital Art. In exchange for that $1 million investment, two stock certificates were issued in ADP's name for a total of 17.85 million shares of Capital Art stock. ADP ultimately distributed 56% of the shares to the Trust, 19% of the shares to Shogun, and the remaining 25% to Watson.

¶ 6      In the summer of 2015, defendant, as manager of ADP, began exploring an opportunity to purchase the Pittsfield Building, a 40-story building located at 55 East Washington Street and designated a Chicago landmark. The Pittsfield Building had multiple owners. Plaintiff owned floors 13-21, known as the Fornelli Tower. A separate group represented by Robert Danial (the Danial group) owned a portion of the lobby, floors 2 through 12, and floors 22 through 40. Defendant's intent was to redevelop the entirety of the Pittsfield Building into a luxury high-rise with a rooftop pool, club, and hotel.

¶ 7      On July 31, 2015, ADP executed an agreement with the Danial group to purchase their portion of the Pittsfield Building for $36 million. That agreement required a $500,000 initial escrow deposit and an additional, non-refundable deposit of $1.75 million after the expiration of the 21-day due diligence period. On August 24, 2015, ADP entered into an amended purchase agreement with the Danial group, extending the due diligence period until September 16, 2015. ADP agreed to release $300,000 of the original $500,000 escrow deposit to the Danial group as a non-refundable payment. Defendant signed both the original purchase agreement and the amendment on behalf of ADP.

¶ 8     On September 16, 2015, ADP entered into a second amended purchase agreement with the Danial group extending the due diligence period until October 9, 2015. ADP agreed to release the remaining $200,000 from the initial $500,000 escrow deposit to the Danial group. Defendant signed the second amendment on behalf of ADP.

¶ 9     Meanwhile, on August 11, 2015, defendant submitted a letter of intent (LOI) to plaintiff on behalf of "EnV Millenium Park" to purchase the Fornelli Tower for $55 million. The LOI represented that the sale would close on October 26, 2015, unless EnV Millenium Park paid an additional $1 million non-refundable deposit to extend the closing by 30 days. The LOI further stated that EnV Millenium Park would make an initial escrow deposit of $800,000 upon execution of the agreement and an additional escrow deposit of $2.7 million after completing due diligence (for a total of $3.5 million). Richard M. Gatto, one of plaintiff's partners, signed and accepted the LOI on behalf of plaintiff.

¶ 10    On September 9, 2015, the parties entered into a purchase agreement for the sale of the Fornelli Tower for $55 million. The purchaser, though, was listed as ADP and *not* as EnV Millenium Park. Defendant signed the purchase agreement on behalf of ADP.

¶ 11    Gatto testified that plaintiff entered into the purchase agreement in part because it understood ADP to be essentially another name for Lynd Development Partners. Given Lynd Development Partners' "track record" in developing EnV Chicago, plaintiff believed that ADP similarly would have the "financial wherewithal" to close the purchase of the Fornelli Tower. Gatto further testified that plaintiff assumed that ADP would include the other members of Lynd Development Partners, but that plaintiff later learned that defendant "was acting a lot more solo."

¶ 12    The respective purchase agreements with plaintiff and with the Danial Group allowed ADP to discontinue the purchase without any financial penalty (other than the $500,000 already released

to the Danial Group) as long as it did so by the October 9, 2015, expiration of the due diligence periods. If ADP continued under the purchase agreements, then it had to post more than $5 million in non-refundable escrow deposits ($3.5 million for the purchase of the Fornelli Tower and $1.75 million for the purchase of the Danial Group portion).

¶ 13    On October 8, 2015, ADP's attorney wrote a letter to both sellers stating that ADP had discovered during due diligence that plaintiff had misrepresented the Fornelli Tower's rentable square footage. The letter also stated that the Danial Group had misrepresented whether the lower floors of the Pittsfield Building could be converted to a hotel. The letter claimed that as a direct result of those misrepresentations, ADP was required to "recreate its financial models, underwriting assumptions and investor package," resulting in "substantial delays, additional costs and overall project devaluation." Based on those claims, ADP demanded that both sellers extend the closing date by 120 days. Plaintiff responded that ADP must comply with its obligations under the purchase agreement, including making the $3.5 million escrow deposit, before a closing date extension would be considered. ADP did not make the $3.5 million escrow deposit on October 9, 2015, and plaintiff notified ADP that it was in breach of its obligations under the purchase agreement.

¶ 14    On November 20, 2015, ADP filed suit against plaintiff in case number 15 CH 17028 asserting claims for fraudulent inducement (count I), fraud (count II), consumer fraud (count III), reformation of contract and specific performance (count IV), and negligent misrepresentation (count V) arising from the failed transaction to purchase the Fornelli Tower. ADP also caused a *lis pendens* to be recorded against the Fornelli Tower. Plaintiff filed a counterclaim against ADP for breach of contract.

¶ 15    Plaintiff moved to dismiss count IV, cancel the *lis pendens*, and impose sanctions against ADP's counsel under Illinois Supreme Court Rule 137 (eff. July 1, 2013). The circuit court cancelled the *lis pendens*, dismissed count IV with prejudice, and entered an order sanctioning ADP's attorneys for filing count IV. Plaintiff moved for summary judgment on the remaining counts and on its counterclaim. The court granted plaintiff summary judgment on ADP's remaining claims and also granted summary judgment for plaintiff on its counterclaim for breach of contract. The court awarded plaintiff $1,205,743.86, comprised of $800,000 in actual damages, pre-judgment interest in the amount of $189,735.15, and $216,008.71 for attorney fees and costs.

¶ 16    In July 2021, plaintiff brought a first amended complaint in case number 2020 CH 05706 against defendant in his personal capacity. The first amended complaint contained three counts. Count I alleged fraud premised on defendant's "multiple false representations of material fact to 55 East Washington concerning his ability to have ADP perform under the Purchase Agreement." In particular, defendant falsely represented that he would cause ADP to deposit $3.5 million in earnest money within 30 days, that he would secure financing for the $55 million purchase of the Fornelli Tower, and that he would close on the purchase by December 9, 2015. The circuit court dismissed count I with prejudice on January 3, 2022.

¶ 17    Count II alleged malicious prosecution based on defendant's role in directing ADP's attorneys to file the 2015 equitable claim for reformation and specific performance as well as the *lis pendens*. On April 22, 2021, the circuit court entered an order dismissing count II with prejudice. On appeal, we affirmed. See *55 East Washington Development, LLC v. Lynd*, 2022 IL App (1st) 210549-U.

¶ 18    Count III sought to pierce the corporate veil and hold defendant personally liable for the $1,205,743.86 judgment entered against ADP on plaintiff's counterclaim for breach of contract in

case number 15 CH 17028. Plaintiff alleged that "at all times," defendant was the sole member and manager of ADP. Defendant failed to observe corporate formalities with respect to ADP and failed to maintain proper business registrations for ADP. ADP did not have a board of directors, had no employees, and did not maintain any bank or other financial accounts. Essentially, ADP functioned as a "façade" for defendant.

¶ 19     Plaintiff alleged that in the leadup to the signing of the purchase agreement for the Fornelli Tower, defendant misrepresented that ADP had the financial backing of the Lynd Company and its subsidiary, Lynd Development Partners, which had successfully financed the earlier development of EnV Chicago. At all times and unbeknownst to plaintiff, though, ADP was unaffiliated with the other Lynd companies and was "grossly undercapitalized for the purpose for which it was created—to enter into residential property development and management transactions." Plaintiff pleaded that under these circumstances, allowing defendant to "maintain ADP as a separate legal entity would sanction a fraud and result in substantial injustice."

¶ 20     On January 3, 2022, the circuit court dismissed count I (fraud) with prejudice and denied the motion to dismiss count III (piercing the corporate veil). Following extensive discovery, the parties filed cross-motions for summary judgment on count III. In support of plaintiff's summary judgment motion, Gatto gave the following deposition testimony:

"Q. So the judgment you have against ADP, 55 East Washington has not recovered any of that money, correct?

A. Not to the best of my knowledge.

Q. And do you believe that it is unfair that 55 East Washington has not recovered any of that money?

* * *

A. Well, sure, yeah. Yes. Yes.

Q. What is your basis for believing that it's unfair?

A. The contract and the rules of engagement were broken. And as a result, it caused harm or damage to really the sale of the property."

¶ 21 On February 20, 2025, the circuit court entered an order granting defendant's motion for summary judgment on count III and denying plaintiff's summary judgment motion, refusing to pierce the corporate veil and hold defendant personally liable for the underlying judgment entered against ADP in case number 15 CH 17028. Plaintiff appeals, contending that the court erred in granting summary judgment for defendant on count III and that instead the court should have granted summary judgment in plaintiff's favor and pierced the corporate veil.

¶ 22 Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the non-movant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. Review is *de novo*. *Id*. ¶ 30. When, as here, the parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Id.* ¶ 28. However, the mere filing of cross-motions for summary judgment does not establish that no issue of material fact exists, nor does it obligate the court to render summary judgment. *Id*.

¶ 23 Ordinarily, the denial of summary judgment is not appealable because such an order is interlocutory in nature. *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 119. However, where the parties have filed cross-motions for summary judgment and one party's motion is granted and the other's denied, review of the denial of summary judgment may be had because the order disposed of all issues in the case. *Id*. Accordingly, we proceed to address plaintiff's appeal

in case number 2020 CH 05706 from the order granting defendant's motion for summary judgment, and denying plaintiff's motion, on count III of the first amended complaint, which sought to pierce the corporate veil and hold defendant personally liable for the underlying judgment entered against ADP in case number 15 CH 17028.

¶ 24      Illinois law provides that efforts to pierce the corporate veil are governed by the law of the state of incorporation. *A.G. Cullen Construction, Inc. v. Burnham Partners, LLC*, 2015 IL App (1st) 122538, ¶ 42. ADP was a Delaware LLC so Delaware law applies to determine whether to pierce the corporate veil. *Id*. Under Delaware law, the doctrine of piercing the corporate veil applies to an LLC, meaning that the Delaware law applicable to the veil-piercing doctrine is the same for both corporations and LLCs. *Westmeyer v. Flynn*, 382 Ill. App. 3d 952, 960 (2008). See also *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F. 3d 168, 176 (2nd Cir. 2008). Since Delaware law generally references the veil-piercing doctrine as "piercing the corporate veil" (as opposed to "piercing the LLC veil"), we will use the same terminology.

¶ 25      Delaware courts and courts applying Delaware law consider a number of factors when determining whether to disregard the corporate form and pierce the corporate veil, including: " 'whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder.' " *Manichaean Capital, LLC v. Exela Technologies, Inc.*, 251 A. 3d 694, 706-07 (Del. Ch. 2021) (quoting *Doberstein v. G-P Industries, Inc.*, 2015 WL 6606484 at *4 (Del. Ch. 2015)). No single factor is dispositive. *Netjets Aviation*, 537 F. 3d at 177. "An ultimate decision regarding veil-piercing is largely based on some combination of these factors, *in addition to* 'an overall element of injustice or unfairness.' " (Emphasis added.)

*Manichaean Capital*, 251 A. 3d at 707 (quoting *Doberstein*, 2015 WL 6606484 at * 4). See also *Harco National Insurance Co. v. Green Farms, Inc.*, 1989 WL 110537 at *5 (Del. Ch. 1989); *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392 at *5 (Del. Ch. 2023); and *Netjets Aviation*, 537 F. 3d at 176-77 (all holding that in addition to some combination of the five factors cited above, an overall element of injustice or unfairness/fraud must always be present, as well).

¶ 26    The fraud or injustice must, however, " 'come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim.' " *Cleveland-Cliffs*, 2023 WL 5688392 at *6 (quoting *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745 at *12 (Del. Ch. 2008)); see also *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) (holding that the "underlying cause of action does not supply the necessary fraud or injustice" and that "[t]o hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping"); *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A. 2d 724, 729 (Del. Super. Ct. 1996) ("the 'injustice' must be more than the breach of contract alleged in the complaint").

¶ 27    In the present case, the circuit court granted defendant's motion for summary judgment on count III of the first amended complaint and denied plaintiff's motion based on plaintiff's failure to properly establish the fraud or injustice element. The court stated:

> "The First Amended Complaint alleges that '[defendant] operated ADP, carried on business, and entered into the Purchase Agreement knowing ADP lacked any of the capital required to meet its debts and contractual obligations' and, therefore, allowing [defendant] to maintain ADP as a separate entity would result in an injustice. (1ˢᵗ Am. Compl. ¶ 105). In other words, Plaintiff's position is that the injustice supporting piercing the corporate

veil is ADP's entering the Purchase Agreement knowing it lacked the capital to meet its obligations under the Agreement. Therefore, the claimed injustice is based upon the underlying claims against ADP, not an inequitable use of the corporate form as a sham."

¶ 28    Elsewhere in the order, the court stated:

"That Plaintiff's claimed injustice is based upon the underlying claims against ADP is confirmed by the deposition testimony of Richard Gatto, Plaintiff's managing member. Mr. Gatto testified that he believed it was unfair that Plaintiff had not been able to recover any of the money it was awarded against ADP because ADP breached the Purchase Agreement after Plaintiff accepted ADP's bid and damaged the sale of the property. (Gatto's Dep. at 66-68)."

¶ 29    The court concluded:

"Delaware does not allow the corporate veil to be pierced in the absence of fraud or injustice distinct from the underlying breach of contract or tort. Because the fraud or injustice supporting Plaintiff's corporate veil theory is not distinct from Plaintiff's underlying claims against ADP, the corporate veil cannot be pierced under Delaware law. Therefore, [defendant] is entitled to summary judgment on Count III of the First Amended Complaint."

¶ 30    The court stated that given its resolution of this case based on the lack of showing of any fraud or injustice committed by defendant which was distinct from the underlying counterclaim for breach of contract against ADP, it was "unnecessary to consider whether Delaware's multi-factor analysis for piercing the corporate veil is met." The court noted that "the multi-factor analysis is irrelevant without the requisite showing of fraud or injustice."

¶ 31    On appeal, plaintiff argues that the circuit court erred in finding that the acts of injustice pleaded in count III of the first amended complaint as supporting the piercing of the corporate veil simply mirrored the allegations in the underlying breach of contract counterclaim against ADP in case number 15 CH 17028. Plaintiff explains that instead of simply repleading the underlying cause of action for breach of contract, count III asserted the additional claims that defendant acted unjustly by misleading plaintiff into thinking that ADP "had the financial backing of the Lynd family businesses." In fact, ADP was unaffiliated with the other Lynd businesses and was essentially "a sham entity [defendant] basically pulled off the shelf that had no assets, that did not follow any corporate formalities, and that [he] alone controlled."

¶ 32    Plaintiff further argues that the trial court misconstrued Gatto's deposition testimony as indicating that the acts of injustice supporting the piercing of the corporate veil stemmed only from the underlying breach of contract against ADP. Plaintiff contends that Gatto was not a representative deponent testifying on plaintiff's behalf but instead he was a non-manager simply explaining his "personal belief that it is unfair that [defendant] defaulted on ADP obligations under the purchase agreement and then used the frivolous lawsuit to prevent [plaintiff] from being able to sell the property to another party." Plaintiff argues that Gatto in no way indicated that the acts of injustice supporting the piercing of the corporate veil merely mirrored the allegations in the underlying counterclaim for breach of contract against ADP.

¶ 33    Defendant counters that count III's allegations of his acts of injustice are substantively the same as the allegations contained in the underlying counterclaim for breach of contract against ADP and as such do not support the piercing of the corporate veil. Defendant further argues that Gatto did not identify any fraud or injustice apart from ADP's underlying breach of contract.

¶ 34    As we discussed earlier in this order, Delaware law is clear that the fraud or injustice supporting a cause of action to pierce the corporate veil must " 'come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim.' " *Cleveland-Cliffs*, 2023 WL 5688392 at *6 (quoting *EBG Holdings*, 2008 WL 4057745 at *12). In other words, the "injustice" must be more than plaintiff's underlying allegation of breach of contract contained in its counterclaim. *Outokumpu*, 685 A. 2d at 729. In granting defendant's motion for summary judgment, the circuit court stated that "the claimed injustice" was indistinct from plaintiff's underlying counterclaim for breach of contract against ADP. Therefore, the court found that the injustice element was not met under Delaware law.

¶ 35    Contrary to the circuit court's finding, our review of the record indicates there is at least a question of material fact as to whether plaintiff met the injustice element necessary to pierce the corporate veil. The underlying claim for breach of contract in case number 15 CH 17028 centered on ADP's failure to comply with the terms of the purchase agreement. Plaintiff's claim of injustice in its first amended complaint in case number 2020 CH 05706 is premised on defendant's actions *prior to the breach* when he allegedly deceived plaintiff into entering into the purchase agreement by making it think that the full resources of the Lynd Company and the Lynd Development Partners were available to help ADP effectuate the purchase of the Fornelli Tower. Plaintiff subsequently learned that ADP was not affiliated with the Lynd Company or the Lynd Development Partners and did not have their financial backing.

¶ 36    Plaintiff's first amended complaint is supported by Gatto, who testified to plaintiff's belief that ADP was essentially another name for Lynd Development Partners, which previously had developed the high-rise apartment building, EnV Chicago. Given Lynd Development Partners' successful track record in developing and financing EnV Chicago, Gatto testified that plaintiff was

convinced that ADP similarly would have the financial capability of closing on the purchase of the Fornelli Tower.

¶ 37    Gatto later learned, after the breach, that defendant was acting "solo" and that ADP did not have the backing of the other Lynd entities. Gatto's testimony was sufficient to raise a genuine issue of material fact as to whether defendant had engaged in fraudulent conduct whereby he had promised and lured plaintiff into signing the purchase agreement based on its belief that it was dealing with a financially sound entity affiliated with Lynd Development Partners. Instead, though, defendant was utilizing a different entity that ultimately was incapable of making the financial payments necessary to complete the transaction.

¶ 38    As Gatto's testimony raised a question of material fact as to whether defendant's allegedly fraudulent conduct predated and was distinct from ADP's subsequent breach of contract, the circuit court erred in finding as a matter of law that the fraud simply mirrored the underlying allegations of breach of contract against ADP. Given this existence of a material issue of fact, summary judgment is inappropriate at this stage of the proceedings. Therefore, we affirm the denial of plaintiff's summary judgment motion, reverse the grant of summary judgment for defendant, and remand for further proceedings. As the circuit court entered summary judgment for defendant based on its erroneous finding as a matter of law that defendant's fraud was indistinct from the underlying allegation of breach of contract against ADP, the court never determined whether plaintiff otherwise met Delaware's multi-factor analysis for piercing the corporate veil. On remand, the court is directed to make such a determination.

¶ 39    Affirmed in part, reversed in part, and remanded.